[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 38.]

BAILEY, APPELLEE, *v.* REPUBLIC ENGINEERED STEELS, INC. ET AL.,
APPELLANTS.

[Cite as *Bailey v. Republic Engineered Steels, Inc.*, 2001-Ohio-236.]

*Workers' compensation—Psychiatric condition of an employee arising from a compensable injury or occupational disease suffered by a third party is compensable under R.C. 4123.01(C)(1).*

(Nos. 99-2174 and 99-2296—Submitted October 11, 2000—Decided February 7, 2001.)

APPEAL from and CERTIFIED by the Court of Appeals for Stark County, No. 1999CA00084.

————————

SYLLABUS OF THE COURT

A psychiatric condition of an employee arising from a compensable injury or an occupational disease suffered by a third party is compensable under R.C. 4123.01(C)(1).

————————

FRANCIS E. SWEENEY, SR., J.

{¶ 1} According to the complaint, on May 15, 1996, Leonard J. Bailey, appellee, an employee of appellant Republic Engineered Steels, Inc. ("Republic"), was operating a tow motor when he accidentally ran over and killed a coworker. As a result of the accident, appellee received treatment for severe depression. Appellee filed an application with the Bureau of Workers' Compensation, appellant, seeking compensation for his depression. The claim was denied at all administrative levels by the Industrial Commission based upon a determination that Bailey had not sustained an injury as defined in R.C. 4123.01(C). Pursuant to R.C.

4123.512, appellee appealed the denial of his claim to the Stark County Court of Common Pleas.

{¶ 2} Republic filed a Civ.R. 12(B)(6) motion to dismiss the action, arguing that Bailey had not suffered a compensable injury under R.C. 4123.01(C)(1). The trial court agreed and granted the motion to dismiss.

{¶ 3} Appellee appealed to the Fifth District Court of Appeals. The court of appeals reversed the trial court. In doing so, the appellate court construed R.C. 4123.01(C)(1) as including psychiatric conditions that arise from a third party's compensable injury or occupational disease.[1]

{¶ 4} Upon motion, the court of appeals certified a conflict to this court, finding that its interpretation of R.C. 4123.01(C)(1) conflicts with a decision from the Second District in *Neil v. Mayfield* (July 22, 1988), Montgomery App. No. 10881, unreported, 1988 WL 76179.

{¶ 5} This case is now before this court upon our determination that a conflict exists (case No. 99-2296, 88 Ohio St.3d 1435, 724 N.E.2d 811) and upon the allowance of a discretionary appeal (case No. 99-2174, 88 Ohio St.3d 1437, 724 N.E.2d 812).

{¶ 6} The question certified by the court of appeals is "[w]hether a psychiatric condition arising from a compensable injury or occupational disease suffered by a third party is compensable under R.C. 4123.01(C)(1)." For the

---

1. Although the court of appeals held that R.C. 4123.01(C)(1)'s definition of injury embraced psychiatric conditions resulting from injuries to others, the court arrived at its holding in a roundabout fashion. In reaching its holding, the appellate court first considered whether the statute was constitutional under the equal protection provisions of the Ohio and United States Constitutions. In doing so, the appellate court ignored basic principles of statutory construction. *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus (courts shall presume statute is constitutional); *Buchman v. Wayne Trace Local School Dist. Bd. of Edn.* (1995), 73 Ohio St.3d 260, 269, 652 N.E.2d 952, 960 (where more than one construction of a statute is possible, court shall adopt the one that preserves its constitutional validity). Since there is a constitutional interpretation of the statute, as explained *infra,* the appellate court should have refrained from addressing the constitutional question.

reasons that follow, we find that a psychiatric condition of an employee arising from a compensable injury or occupational disease suffered by a third person is compensable under R.C. 4123.01(C)(1). We affirm the judgment of the court of appeals.

**{¶ 7}** The statute at issue is R.C. 4123.01(C)(1). This statute defines the term "injury," as that word is used in Ohio's workers' compensation laws, as:

" 'Injury' includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment. 'Injury' does not include:

"(1) Psychiatric conditions except where the conditions have arisen from an injury or occupational disease."[2]

**{¶ 8}** The primary goal in statutory interpretation is to give effect to the intent of the legislature. *Christe v. GMS Mgt. Co., Inc.* (2000), 88 Ohio St.3d 376, 377, 726 N.E.2d 497, 499. In determining legislative intent, the court first looks to the language of the statute. *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105, 65 O.O.2d 296, 298, 304 N.E.2d 378, 381. In considering the statutory language, it is the duty of the court to give effect to the words used in a statute, not to delete words used or to insert words not used. *Cleveland Elec. Illum. Co. v. Cleveland* (1988), 37 Ohio St.3d 50, 524 N.E.2d 441, paragraph three of the syllabus. If the meaning of the statute is unambiguous and definite, it must be applied as written. *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.* (1996), 74 Ohio St.3d 543, 545, 660 N.E.2d 463, 465.

---

2. Before its amendment in 1986, the statute had defined a compensable injury as "any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment." Am.Sub.H.B. No. 340, 140 Ohio Laws, Part II, 3481, 3485. The 1986 legislation amended R.C. 4123.01(C)(1) to provide that the definition of injury did not include psychiatric conditions, except those that had arisen from a physical injury or occupational disease. Am.Sub.S.B. No. 307, 141 Ohio Laws, Part I, 718.

**{¶ 9}** The plain reading of the statute reveals that the intent of the General Assembly is to limit claims for psychiatric conditions to situations where the conditions arise from an injury or occupational disease. However, R.C. 4123.01(C)(1) does not specify who must be injured or who must sustain an occupational disease. If we were to construe the statute as requiring that the compensable injury must be suffered by the claimant, we would be inserting words into the statute. Thus, whether R.C. 4123.01(C)(1) includes psychiatric conditions arising from physical injuries sustained by third parties is not a question that can be answered from the plain language of the statute.

**{¶ 10}** Where the words of a statute are ambiguous, interpretation is necessary. *State ex rel. Celebrezze v. Allen Cty. Bd. of Commrs.* (1987), 32 Ohio St.3d 24, 27, 512 N.E.2d 332, 335. Ambiguity exists if the language of the statute is susceptible of more than one reasonable interpretation. *State ex rel. Toledo Edison Co. v. Clyde* (1996), 76 Ohio St.3d 508, 513-514, 668 N.E.2d 498, 504.

**{¶ 11}** In determining legislative intent when faced with an ambiguous statute, the court may consider several factors, including the object sought to be obtained, circumstances under which the statute was enacted, the legislative history, and the consequences of a particular construction. R.C. 1.49; *State v. Jordan* (2000), 89 Ohio St.3d 488, 492, 733 N.E.2d 601, 605. Along with these statutory construction principles, we must also apply the directive found in R.C. 4123.95 to liberally construe the workers' compensation laws in favor of employees. A liberal construction has been defined as giving "generously all that the statute authorizes," and "adopting the most comprehensive meaning of the statutory terms in order to accomplish the aims of the Act and to advance its purpose, with all reasonable doubts resolved in favor of the applicability of the statute to the particular case. Interpretation and construction should not result in a decision so technical or narrow as to defeat the compensatory objective of the Act."

Fulton, Ohio Workers' Compensation Law (2 Ed.1998) 9, Section 1.7. We now turn to a discussion of those relevant factors.

{¶ 12} The foundation for Ohio's workers' compensation system is the Ohio Constitution. In 1912, the Ohio Constitution was amended to adopt an enabling provision authorizing the enactment of legislation for the compensation of workers injured in the workplace. See Section 35, Article II of the Ohio Constitution. "[L]aws may be passed * * * determining the terms and conditions upon which payment shall be made therefrom." In accordance with this mandate, the General Assembly promulgated the Ohio Workers' Compensation Act, R.C. Chapter 4123. " '[F]ounded upon wise, beneficent and humanitarian principles,' workers' compensation provides in the interests of justice a salutary measure designed for the protection of those unfortunate enough to suffer work-related injuries. The polestar of the system is the welfare of the workers." Fulton, *supra*, at 2, Section 1.1, quoting *Suez v. Young* (1963), 118 Ohio App. 415, 418, 25 O.O.2d 315, 316, 195 N.E.2d 117, 120. Thus, it has succinctly been said that the purpose of the Act is to protect employees against risks and hazards incident to the performance of their work. *Phelps v. Positive Action Tool Co.* (1986), 26 Ohio St.3d 142, 144, 26 OBR 122, 123, 497 N.E.2d 969, 971.

{¶ 13} The workers' compensation system was enacted to replace the unsatisfactory common-law remedies available to those injured in the workplace. *Indus. Comm. v. Weigandt* (1921), 102 Ohio St. 1, 7, 130 N.E. 38, 39-40. The Act reflected a growing public sentiment that employees should receive compensation for work-related injuries and that compensation should be regarded as a charge upon the business in which the employee worked. Fulton, *supra*, at 3, Section 1.2. The cost of the system was and is taxed to the employer as an expense involved in carrying on a business. *Village v. Gen. Motors Corp.* (1984)*,* 15 Ohio St.3d 129, 131, 15 OBR 279, 280, 472 N.E.2d 1079, 1081. The Workers' Compensation Act is a product of compromise between employers and employees. The compromise

is that if there is an event arising out of workplace requirements, which event is the proximate cause of a worker's injury, that worker should be afforded the protections of a compensable claim. In exchange, the employer is granted immunity from civil suit. The Act provides the statutory mechanism for providing cash-wage benefits and medical care to victims of work-connected injuries and for allocating the ultimate cost of such injuries to consumers by augmenting the cost of goods or services that are a product of that work in order to reimburse employers for a prescribed insurance premium. Fulton, *supra*, Section 1.2.

{¶ 14} After a consideration of the above, we conclude that the legislature's intent was to allow compensation in cases where an employee suffers a mental injury caused by a coworker's physical injury. This construction of the statute fulfills the compensatory objective and humanitarian nature of the Act. In fact, to deny coverage to a claimant who has suffered a psychiatric injury as a result of a physical injury to a coworker would frustrate the very purpose of the Act, which is to compensate workers who are injured as a result of the requirements of their employment. In addition, a contrary reading of the statute would eviscerate the "benefit of the bargain" compromise component of the workers' compensation system.

{¶ 15} We also reject Republic's arguments that other provisions of the Act support its position that Bailey's injury is not compensable. Republic points to the noncompensability of self-inflicted injuries, injuries caused by intoxication or controlled substances, and suicide claims, among others. See R.C. 4123.54(A) and (B). However, these injuries are clearly outside the scope of an employee's duties in the workplace and are obviously not compensable. In contrast, where an employee witnesses or accidentally causes a coworker's injury and develops a psychiatric condition as a result, the injury is sustained within the scope of employment. Under these circumstances, it would be nonsensical to deny compensation for this type of injury.

**{¶ 16}** Accordingly, we hold that a psychiatric condition of an employee arising from a compensable injury or occupational disease suffered by a third party is compensable under R.C. 4123.01(C)(1). Applying our holding to the facts of this case, which we accept as true according to Civ.R. 12(B)(6), *Taylor v. London* (2000), 88 Ohio St.3d 137, 139, 723 N.E.2d 1089, 1091, we find that Bailey presents an arguable claim for compensation under R.C. 4123.01(C)(1). Thus, the trial court erred in granting Republic's motion to dismiss Bailey's complaint for failure to state a claim upon which relief can be granted. The judgment of the court of appeals is affirmed, and the cause is remanded to the common pleas court for further proceedings consistent with this opinion.[3]

*Judgment affirmed.*

DOUGLAS, RESNICK and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

_____

**COOK, J., dissenting.**

**{¶ 17}** The majority concludes that R.C. 4123.01(C) permits compensation to an employee for a psychiatric condition where the psychiatric condition does not arise from a physical injury or occupational disease suffered by that employee. In reaching this result, the majority finds the statutory scheme ambiguous, asserting that "R.C. 4123.01(C)(1) does not specify who must be injured or who must sustain an occupational disease."

**{¶ 18}** But R.C. 4123.01(C)(1) must be read in conjunction with R.C. 4123.01(C). When this is done, the statutory scheme provides that an "[i]njury does not include * * * [p]sychiatric conditions except where the conditions have arisen from an injury," which "includes any injury * * * received in the course of, and

---

3. We dismiss, as improvidently allowed, the discretionary appeal in case No. 99-2174, 88 Ohio St.3d 1437, 724 N.E.2d 812.

arising out of, the injured employee's employment," or from an occupational disease. The statute therefore mandates (1) that a condition can constitute an injury for purposes of workers' compensation only if it is received in the course of and arises out of "the" injured employee's employment, R.C. 4123.01(C); and (2) that a psychiatric condition constitutes an injury only if it arises from a predicate injury as defined in R.C. 4123.01(C). R.C. 4123.01(C)(1). The General Assembly's use of "the" in R.C. 4123.01(C) should be read in light of the statutory directive that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." R.C. 1.42. Here, the word "the" in R.C. 4123.01(C) is a definite rather than an indefinite article. As such, "the" limits "employee" so as to indicate the singular, distinguishing the *sole*, *specific* injured employee from *any* injured employee. Therefore, the General Assembly's use of "the" in R.C. 4123.01(C) is restrictive. That is, the article confines the focus of inquiry to a specific, sole employee: the claimant alleging the psychiatric condition. It is not any employee whose injury can render a psychiatric condition compensable; rather, it is a physical injury or occupational disease suffered by a specific, single employee in the course of that individual's employment that could permit compensation for a related psychiatric condition.

{¶ 19} Even assuming *arguendo* that R.C. 4123.01(C)(1) is ambiguous, the context and intent surrounding the statute indicate that one specific employee is the focus of the inquiry — the employee claiming the psychiatric condition must have sustained the physical injury. When a statute is ambiguous and the court must determine the intent of the legislature, R.C. 1.49 permits the court to consider, in addition to other matters:

"(A) The object sought to be attained;

"(B) The circumstances under which the statute was enacted;

"(C) The legislative history;

8

"(D) The common law or former statutory provisions, including laws upon the same or similar subjects;

"(E) The consequences of a particular construction;

"(F) The administrative construction of the statute."

{¶ 20} The context in which R.C. 4123.01(C)(1) was enacted and the administrative construction of that statute may therefore inform my interpretation of that section. This court has emphasized the importance of these two factors, stating:

"The court *must* consider the context of the 1986 amendments [to R.C. 4123.01] because 'a legislative body in enacting amendments is presumed to have in mind prior judicial constructions of the section.' *State ex rel. Huron Cty. Bd. of Edn. v. Howard* (1957), 167 Ohio St. 93, 96, 4 O.O.2d 83, 84, 146 N.E.2d 604, 607. We also presume that the General Assembly had in mind prior administrative constructions of the statutory sections." (Emphasis added.) *Rambaldo v. Accurate Die Casting* (1992), 65 Ohio St.3d 281, 286, 603 N.E.2d 975, 979.

{¶ 21} Review of the context surrounding the 1986 addition of R.C. 4123.01(C)(1) to the statutory scheme reveals that the purpose behind the amendment was merely to clarify the intent of the General Assembly. Prior to the 1986 amendments, there existed a long history of judicial constructions of "injury" evincing an understanding that compensable injuries under the workers' compensation system had to include a physical component suffered by the claimant. For example, psychiatric conditions arising from a physical injury were allowed. See, *e.g.*, *State ex rel. Anderson v. Indus. Comm.* (1980), 62 Ohio St.2d 166, 16 O.O.3d 199, 404 N.E.2d 153. But "[d]isabilities occasioned solely by emotional stress without contemporaneous physical injury or physical trauma [were] not compensable injuries within the meaning of R.C. 4123.01(C)." *Szymanski v. Halle's Dept. Store* (1980), 63 Ohio St.2d 195, 17 O.O.3d 120, 407 N.E.2d 502, syllabus. Accordingly, an employee whose job-related emotional stress caused a

heart attack failed to present a compensable injury. *Id*. In reaching this result, this court interpreted that version of R.C. 4123.01(C) in place from 1959 until the 1986 amendments. See 128 Ohio Laws 744-745; 141 Ohio Laws, Part I, 739. The *Szymanski* court explained that this version of the statute codified existing case law that defined an injury as requiring contemporaneous physical injury or physical trauma. *Id*. at 198, 17 O.O.3d at 122, 407 N.E.2d at 505.

{¶ 22} The 1986 amendment resulting in R.C. 4123.01(C)(1) explicitly codified that "mental-mental" claims — psychiatric conditions arising solely from job-related emotional stress — were not compensable under the system. And the relevant 1986 amendments to R.C. 4123.01(C) were aimed at clarifying that while "mental-mental" claims are not allowed, "mental-physical" claims are permitted. Nothing in the 1986 amendments, however, suggests that they were meant to introduce a previously unrecognized category of psychiatric claims arising from injuries to *third parties*.

{¶ 23} Further, the administrative construction of both current R.C. 4123.01(C) and its precursor support interpreting R.C. 4123.01(C) as denying psychiatric conditions related to physical injuries to third parties. The Bureau of Workers' Compensation not only denied compensation to Bailey in the instant case, but also has required a physical injury to the claimant before granting compensation for a psychiatric condition, both prior to and following the 1986 amendments. See, *e.g*., *Andolsek v. Kirtland* (1994), 99 Ohio App.3d 333, 650 N.E.2d 911; *Connors v. Sterling Milk Co.* (1993), 98 Ohio App.3d 711, 649 N.E.2d 856; *Fields v. Youngstown* (May 30, 1989), Mahoning App. No. 88 CA 89, unreported, 1989 WL 59014; *Neil v. Mayfield* (July 22, 1988), Montgomery App. No. 10881, unreported, 1988 WL 76179.

{¶ 24} Finally, today's holding is at odds with the construction of the statutory scheme set forth by the majority in *Bunger v. Lawson Co.* (1998), 82 Ohio St.3d 463, 465-466, 696 N.E.2d 1029, 1032 (rejecting "mental-mental" claim). In

*Bunger*, this court acknowledged that the limited scope of the workers' compensation system requires the existence of a physical injury *to the claimant*, stating:

"The workers' compensation system was not designed to resolve every dispute that arises between employers and employees. It was designed to manage the compensation of individuals who suffer physical injuries or contract occupational diseases on the job.

" * * *

"A majority of states allow compensation to workers for some purely psychological injuries suffered in the workplace. * * * Ohio's General Assembly has yet to make such injuries compensable under workers' compensation statutes. * * * [P]sychological injuries are removed from the coverage of the Act * * *." (Citation omitted.) *Id*. at 465-466, 696 N.E.2d at 1032. Today's majority decision does not even acknowledge *Bunger*.

{¶ 25} Bailey is not entitled to compensation for his depression since he has not suffered a predicate "injury" *as that term is defined under R.C. 4123.01(C)*. Accordingly, I respectfully dissent.[4]

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing dissenting opinion.

———————————

*Brian & Brian, Steven J. Brian, Richard F. Brian* and *Brian R. Mertes,* for appellee.

*Black, McCuskey, Souers & Arbaugh, Mary E. Randall, Edward C. Redder* and *John L. Juergensen,* for appellant Republic Engineered Steels, Inc.

———————————

4. As in *Bunger*, the parties here argue the constitutionality of the statutory scheme defining what constitutes an injury. The majority's reasoning, however, avoids the issue. Accordingly, similar to *Bunger*, I respond only to the majority's statutory analysis. See *Bunger*, 82 Ohio St.3d 463, 469-470, 696 N.E.2d 1029, 1035 (Cook, J., dissenting).

*Betty D. Montgomery,* Attorney General, and *Gerald H. Waterman,* Assistant Attorney General, for appellant Administrator, Bureau of Workers' Compensation.

*Paulette M. Ivan, Ronald A. Fresco* and *William R. Thomas,* urging reversal for *amici curiae* Yellow Freight Systems, Inc., Landair/Forward Air Services, and Johnson Controls, Inc.

*Vorys, Sater, Seymour & Pease*, *Robert A. Minor* and *Robin R. Obetz,* urging reversal for *amici curiae* Ohio Manufacturers' Association and Ohio Self-Insurers' Association.

*Philip J. Fulton & Associates, Philip J. Fulton, William A. Thorman III* and *Jonathan H. Goodman,* urging affirmance for *amicus curiae* Ohio Academy of Trial Lawyers.

*Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy* and *Marc J. Jaffy,* urging affirmance for *amici curiae* Ohio AFL-CIO and Ohio Psychological Association.

––––––––––––––––––––